USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/25/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERIC GERSBACHER,

Plaintiff,

-against-

THE CITY OF NEW YORK, OFFICER GONZALEZ, OFFICER RAMIREZ, DEPUTY INSPECTOR EDWARD WINSKI, and JOHN DOE POLICE OFFICERS 1-10,

Defendants.

1:14-cv-7600-GHW

MEMORANDUM OPINION AND ORDER

GREGORY H. WOODS, District Judge:

On September 20, 2011, Plaintiff Eric Gersbacher was arrested while participating in the Occupy Wall Street demonstrations in Zuccotti Park in lower Manhattan. Gersbacher alleges that he was unlawfully arrested as part of the New York City Police Department's ("NYPD") efforts to harass the protesters and discourage First Amendment expression, that NYPD officers used excessive force in effectuating his arrest, and that NYPD officers were deliberately indifferent to his serious medical condition when he suffered an asthma attack during the arrest. The City of New York ("the City"), Police Officers Gonzalez and Alan Ramirez, and Police Deputy Inspector Edward Winski (together "Defendants"), move to dismiss Gersbacher's complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' motion is DENIED.

## I. Background[1]

On the morning of September 20, 2011, prior to his arrest, Gersbacher was sitting on top of a blue tarp in Zuccotti Park in lower Manhattan. Compl. ¶¶ 1, 25, ECF No. 1. Protesters associated

[1] The facts in this section are taken from the complaint, and for the purposes of this motion only are accepted as true. For the reasons explained in Section III.A, *infra*, the videos put forth by Defendants are not taken into account in this factual background.

with the Occupy Wall Street movement had begun to occupy the park a few days prior to Gersbacher's arrest, and would remain in the park for nearly two months afterwards. *Id.* ¶ 19.

The protesters had been told by Inspector Winski that the police would be enforcing New York City Administrative Code §16-122(b), which forbids the erection of structures in public places. *Id.* ¶ 22. Gersbacher alleges that the police did not issue any citations, but that this threat was one of the tactics used by police to intimidate protesters and make them feel unsafe. *Id.* ¶¶ 21, 23. As a result, protesters detached their tarps from trees and other objects so that they were not creating "structures." *Id.* ¶ 24.

Around 10:00 am, Gersbacher was seated on one such tarp and approximately ten NYPD officers, including Officers Gonzalez and Ramirez, were standing near the tarp. *Id.* ¶ 28. The plaintiff witnessed NYPD officers tackle and arrest three other individuals nearby. *Id.* ¶ 29. Police officers then pulled Gersbacher away from the tarp by his shirt, and Gersbacher fell and asked the officers what they were doing. *Id.* ¶¶ 30, 31, 33. The officers did not respond, and Gersbacher stood back up and began moving away from the officers. *Id.* ¶¶ 34 – 36. The officers then pulled Gersbacher back and forced him to the ground, holding him down with their body weight and causing bruising and cuts on Gersbacher's forehead by pushing his face against the ground. *Id.* ¶¶ 37 – 41.

While Gersbacher was face down on the ground, NYPD officers began punching him, pulled his arms behind his back, and placed his hands in plastic flexi-cuffs. *Id.* ¶¶ 51 – 53. Around this time Gersbacher began to have an asthma attack. *Id.* ¶ 54. He informed the NYPD officers that he was having an asthma attack and could not breathe. *Id.* ¶¶ 57, 59. A bystander told the police that they had an inhaler for Gersbacher to use, but the police did not respond. *Id.* ¶¶ 66, 67. The NYPD officers continued to pin Gersbacher to the ground for two minutes before allowing him to sit up and use the inhaler. *Id.* ¶ 68.

At some later point, although Gersbacher does not specify when, the NYPD officers lifted him off the ground only to shove him back down and pin him to the ground again. *Id.* ¶¶ 78 – 80. When a police officer pulled Gersbacher's left arm it slipped out of the flexi-cuff and Gersbacher tried to curl himself into a ball. *Id.* ¶¶ 81 – 84. NYPD officers then pulled Gersbacher's left arm back to cuff him again, and Gersbacher indicated to the police that he would permit himself to be handcuffed but that he needed to breathe. *Id.* ¶¶ 85, 86. The officers put Gersbacher's left wrist back in the flexi-cuff, grabbed him by the arms, and lifted him off the ground. *Id.* ¶¶ 88, 89. Gersbacher asked what he was being charged with and the police officers did not respond. *Id.* ¶¶ 91, 92.

The NYPD officers then took Gersbacher to the 1st Precinct. *Id.* ¶ 93. During the drive to the precinct, Gersbacher repeatedly requested that the officers loosen the flexi-cuffs; the officers did not respond to these requests. *Id.* ¶¶ 94, 95. While being held in the waiting area of the 1st Precinct, Gersbacher again asked an officer to loosen or remove his handcuffs, and the police officer responded that he could "make those handcuffs hurt more" if Gersbacher kept talking. *Id.* ¶¶ 98, 99. Gersbacher's wrists were in pain and his hands turned purple as a result of how tightly he was cuffed. *Id.* ¶¶ 96, 97. He later found cuts and bruises where the flexi-cuffs had been. *Id.* ¶ 102. After an about an hour, a police officer roughly removed the cuffs with scissors, causing Gersbacher additional pain. *Id.* ¶¶ 100, 101.

Gersbacher was then taken from the waiting area to a holding cell. *Id.* ¶ 101. While he was in the holding cell, Officer Ramirez instructed him to decline if anyone asked if he needed medical treatment. *Id.* ¶ 105. Gersbacher replied that he did need treatment and would say so, and Officer Ramirez then hit the bars of the holding cell in an effort to intimidate Gersbacher. *Id.* ¶¶ 106, 107. Gersbacher did request medical treatment while in the holding cell, but his requests were ignored. *Id.* ¶¶ 108, 109.

After approximately eleven hours, NYPD officers, including Officer Ramirez, transferred Gersbacher to Central Booking. *Id.* ¶ 110. At Central Booking, a paramedic asked Gersbacher if he needed medical treatment, but because Officer Ramirez was present Gersbacher said that he did not require medical treatment. *Id.* ¶¶ 111 – 113.

Gersbacher was charged with Obstruction of Government Administration in the Second Degree and Resisting Arrest, New York Penal Law §§ 195.05 and 205.30. The charges were eventually dismissed. *Id.* ¶¶ 115, 117.

As a result of this incident, Gersbacher alleges significant physical, mental, and emotional injuries. *Id.* ¶¶ 118, 119. He was not able to resume his participation in the Occupy Wall Street demonstrations or return to college. *Id.* ¶¶ 120 – 122. In May 2012, Gersbacher began work at a landscaping company, but he was terminated shortly after he was hired as a result of this arrest. *Id.* ¶¶ 123 – 124.

Gersbacher filed this action under 42 U.S.C. § 1983 on September 19, 2014. He brings claims against Defendants for (1) false arrest; (2) failure of individual officers to intervene to prevent violations of his constitutional rights; (3) use of excessive force; (4) deliberate indifference to serious medical needs on violation of his due process rights; (5) retaliation for exercise of his First Amendment rights; and (6) municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).[2] Defendants move to dismiss all claims.

**II. Legal Standard**

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *DiFolco*

[2] Plaintiff styles his complaint as containing seven claims, but his first cause of action alleges only that Defendants were acting under the color of state law when the constitutional violations occurred. Therefore, plaintiff's first cause of action is actually just pleading the first element of a section 1983 claim for his six subsequent claims. *See* 42 U.S.C. § 1983. Defendants do not contest that they were acting under the color of state law, and the Court will address each of Gersbacher's six alleged constitutional violations in turn.

*v. MSNBC Cable LLC*, 622 F.3d 104, 110-11 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). To avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A formulaic recitation of the elements of a cause of action, devoid of supporting facts, does not suffice. *Id.* To satisfy the "plausibility" requirement, the plaintiff must plead facts that permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

## III. Discussion

### A. Whether the Videos May Be Properly Considered with the 12(b)(6) Motion

Before assessing the sufficiency of the complaint, the Court must determine which sources of information beyond the complaint, if any, should be considered. "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 111 (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). The court may also consider a document that is "integral" to the complaint, however, "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Id.* (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

Gersbacher's complaint explicitly incorporates ten items, including a report entitled "Suppressing Protest: Human Rights Violations in the U.S. Response to Occupy Wall Street" (the "Report"). Compl. ¶ 206 n.8. Defendants base their motion to dismiss on three videos, two of which are hyperlinked in a footnote and an appendix of the online version of the Report. These first two videos are three minutes long and thirty seconds long, respectively (the "three-minute

video" and "thirty-second video"). The third video (the "nine-minute video"), defendants assert, is an unedited version of one of the two videos linked in the Report, and Defendants prefer this video to the three-minute video, which they describe as "edited, decontextualized, and incomplete." Defs.' Br. 2, ECF No. 17. Gersbacher takes the position that none of the sources cited in the Report are incorporated into his complaint, and thus the videos should not be considered here. Pl.'s Opp. 8, ECF No. 20. He points out that he did not refer to the video footage in his pleadings and relied upon the Report only in support of his *Monell* claim. Pl.'s Opp. 12. Therefore, the Court must first resolve whether it can properly consider the videos when evaluating Defendants' motion.

Defendants' description of the relationship between the videos and the complaint demonstrates why the videos cannot be considered with their motion to dismiss. The first page of Defendant's brief states that the Court should consider the nine-minute video because "a partial version of [the video] is contained within [the] report relied upon by plaintiff and incorporated into plaintiff's complaint." Defs.' Br. 1. This attenuated chain of events cannot support the consideration of unauthenticated video evidence at this stage of litigation. The law provides that documents outside of the complaint may be considered under specific circumstances; when they are attached to the complaint as exhibits, incorporated into the complaint by reference, or integral to the complaint. *Chambers*, 282 F.3d at 152-53. The Court will describe such documents as "one step removed" from the complaint. The Report is one step removed from the complaint; it is incorporated by reference. The three-minute and thirty-second videos are two steps removed from the complaint, as (1) the Report is incorporated into the complaint, and (2) the Report contains citations to these two videos (among myriad other sources).[3] The nine-minute video is three steps

[3] For analytical purposes, the Court describes the thirty second and three minute videos as being "two steps" from the Complaint. But the relationship between those videos and the Report is substantially more tenuous than the relationship between the Report and the Complaint. The videos are merely cited in the Report. They are not incorporated by reference into it. Nor can they properly be described as "integral" to the Report. The short videos can be described as two steps removed from the Complaint, but the second step is bigger than the first.

removed: (1) the Report is incorporated into the complaint, (2) the Report contains citations to two videos, which Defendants contend do not provide a complete picture of events, but (3) Defendants have located a longer video that they claim is the complete version of the three-minute video cited in the Report. It is this nine-minute video that Defendants rely upon in their motion.

Defendants offer three strained arguments in support of their contention that the videos should be considered at this stage. They argue that the court should consider materials available on the Internet and incorporated by a web citation the same way it considers materials physically filed with the complaint, that courts consider documents integral to the complaint even where the plaintiff does not attach the document to the complaint, and that where a plaintiff relies on a partial or incomplete version of a document, the court may consider the full document in deciding a motion to dismiss. None of these arguments are persuasive.

With respect to Defendants' first argument, the Court is not treating the videos or websites hyperlinked in the Report any differently than print materials cited in the report. The text of the Report is deemed to be part of the pleadings since the Plaintiff incorporated it by reference into his complaint. The plaintiff did not, however, incorporate by reference the hundreds of news articles, scholarly articles, videos, and other materials that are cited in the Report. Regardless of whether those materials appear on the Internet, in print, or both, they are not part of the complaint.

Defendants' second argument is that these videos are "integral" to the complaint. Defendants base their reasoning on *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42 (1991), and its progeny. In *Cortec*, the Second Circuit held that the district court could consider a stock purchase agreement, offering memorandum, and warrant in a case where the defendants transmitted these papers to the plaintiff and the plaintiff relied upon them in drafting his complaint. 949 F.2d at 48. The *Cortec* court noted that there were limited other circumstances in which papers outside the complaint could be considered on a Rule 12(b)(6) motion—namely, courts may consider a

prospectus when the complaint relies solely on the prospectus, and courts may consider public SEC filings when deciding a motion to dismiss a complaint alleging securities fraud. *Id.* at 47 (citing *Pincus & Assoc. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

Since deciding *Cortec*, the Second Circuit has emphasized that in order for a document extraneous to the complaint to be considered at the motion to dismiss stage, the plaintiff must have *relied upon it* in drafting the complaint; it is not sufficient that the plaintiff had notice or possession of the document. *Chambers*, 282 F.3d at 153 (citing *Cortec* 949 F.2d at 47-48) (emphasis added). Gersbacher may have been aware that his arrest was filmed, but there is nothing that indicates that he had seen the videos prior to Defendants raising them, much less relied upon them in drafting the complaint. In fact, after the videos were first raised by Defendants, Gersbacher responded, in part, by striking paragraph 32 of the complaint. Defs.' Letter, Mar. 5, 2015, ECF No. 12; Pl.'s Letter, March 6, 2015, ECF No. 13. Further, during the June 29, 2015 status conference in this case, Gersbacher's counsel stated that the videos were not utilized in drafting the complaint. Because Gersbacher did not rely upon the videos in drafting the complaint, they are not integral to the complaint and cannot be considered in this Court's evaluation of the motion to dismiss.

Moreoever, and as discussed above, even if the Court assumed for a moment that these videos were "integral" to the complaint they would still be excluded from consideration because there are disputes regarding their authenticity and accuracy. *See Faulkner*, 463 F.3d at 134. Indeed, the Defendants themselves dispute their accuracy and authenticity. Defendants' third argument is that the Court should consider the nine-minute video because, they contend, the shorter videos are edited and decontextualized and "incomplete." Defs.' Br. 2. But Defendants offer no guarantee that the video for which they advocate for is an accurate, unedited, and complete depiction of the events at issue. Further, the Court notes that it is apparent from viewing the videos that the three-

minute video is not an edited excerpt of the nine-minute video as Defendants assert; the two videos appear to have been shot by two different individuals as certain events, for example Gersbacher's asthma attack, are shown from different angles. The fact that two videos were uploaded to YouTube from the same account does not mean, as Defendants imply, that the same person is the source of both videos, or that one video is an excerpt of the other. In sum, it is far from clear that the videos are accurate and authentic, and so they cannot be considered here.

The Court's conclusion is consistent with recent cases in this district that have dealt with the issue of video evidence at the motion to dismiss stage. In the case most directly on point, *Pluma v. City of New York*, the Court declined to consider video offered by the City in support of its motion to dismiss in another section 1983 case arising out of the Occupy Wall Street movement. No. 13-CV-2017, 2015 WL 1623828, at *3 (S.D.N.Y. March 31, 2015) (Preska, C.J.). In so doing, the Court noted that the video was neither referenced in the complaint nor relied upon in bringing the lawsuit. *Id.* In contrast, where courts *have* considered video evidence in conjunction with 12(b)(6) motions, the video has either been offered by the plaintiff as part of its pleadings or the plaintiff has incorporated the video by reference after the defendant introduced the video. *See Garcia v. Does*, 779 F.3d 84, 87 n.2 (2d Cir. 2015) (noting that no party contested the inclusion of the video in the court's review of the complaint, and explicitly declining to determine whether videos could be "written instruments" under Federal Rule of Civil Procedure 10(c)); *Nikci v. Quality Building Services*, 995 F.Supp.2d 240, 244 n.1 (S.D.N.Y. 2014) (considering surveillance video where plaintiff relied on video in the complaint and then made the video part of the record on motion to dismiss); *Hershey v. Goldstein*, 938 F.Supp.2d 491, 498 n.1 (S.D.N.Y. 2013) (considering video footage submitted by defendant in support of motion to dismiss where plaintiff had referred to video in complaint and stated that the video was incorporated by reference in motion to dismiss briefing); *Burck v. Mars, Inc.*, 571 F.Supp.2d 446, 449 n.1 (S.D.N.Y. 2008) (video submitted by defendant at oral argument was

considered where plaintiff had referred to video in the complaint and video was incorporated by reference). Assuming *arguendo* that the videos are admissible evidence, they may be considered at summary judgment or at trial.[4]

**B. Qualified Immunity**

Defendants argue that they are entitled to qualified immunity, which "shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stephenson v. Doe*, 332 F.3d 68, 76 (2d Cir. 2003) (quoting *McCardle v. Haddad*, 131 F.3d 43, 50 (2d Cir. 1997)).

"[M]otions to dismiss a plaintiff's complaint under Rule 12(b)(6) on the basis of an affirmative defense will generally face a difficult road." *Garcia v. Does*, 779 F.3d 84, 97 (2d Cir. 2015). "But that does not mean that qualified immunity can never be established at the pleading stage." *Id.* The Court is mindful that the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

In determining whether qualified immunity applies, a district court must determine whether the facts as alleged by the plaintiff "make out a violation of a constitutional right," and whether that right was "clearly established" at the time of the events in question. *Pearson*, 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "Where the nonexistence of a constitutional right may be discerned from the face of the complaint, an official defendant sued in his individual capacity may

[4] Defendants, perhaps acknowledging that if the videos are not considered their motion to dismiss is unlikely to succeed, request that if the Court finds that the videos are not properly before it that the Court then convert their motion to a motion for summary judgment under Federal Rule of Civil Procedure 12(d). The Court has discretion in determining whether to convert a motion to dismiss into one for summary judgment. *See Kouakou v. Fideliscare New York*, 920 F.Supp.2d 391, 396 (S.D.N.Y. 2012). Because the parties in this case are in the early stages of discovery "the plaintiff has not had the opportunity to gather and present evidence in opposition to the defendant's motion," and so the Court declines to convert the motion under Rule 12(d). *Fargas v. Cincinnati Machine, LLC*, 986 F.Supp.2d 420, 421 (S.D.N.Y. 2013) (citing *Kouakou*, 920 F.Supp.2d at 396).

be granted a dismissal on the ground of qualified immunity pursuant to Rule 12(b)(6) . . . ." *Vincent v. Yelich*, 718 F.3d 157, 167 (2d. Cir. 2013).

**C. The False Arrest Claim**

Defendants argue that Gersbacher's false arrest and retaliation claims must be dismissed because NYPD officers had probable cause to arrest him. In order to state a claim for false arrest, a plaintiff must show that he was intentionally confined without his consent and without justification. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "Probable cause is a complete defense to false arrest claims." *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (citing *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007)). Probable cause exists where the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* (quoting *Weyant*, at 852). Probable cause need not be predicated on the offense the arresting officer invoked in making the arrest, "so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006). The existence of probable cause will also defeat a First Amendment claim that the plaintiff's arrest was based on a retaliatory motive, even if the arrest is in actuality an attempt to chill protected speech. *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012) (citing *Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir. 1992)).

Gersbacher was charged with Obstruction of Government Administration in the Second Degree, New York Penal Law § 195.05, and Resisting Arrest, New York Penal Law § 205.30.

Defendants contend that there was also probable cause to arrest Gersbacher for Disorderly Conduct under New York Penal Law § 240.20.[5]

Defendants do not argue that Gersbacher's complaint fails to state a claim for false arrest, instead they rely entirely on their contention that the nine-minute video establishes probable cause. But, as discussed, the Court cannot consider the video at this stage in the litigation. The complaint does state that Gersbacher moved away from the police after his initial contact with them, Compl. ¶¶ 35-36, but it does not suggest that he was disobeying a lawful order from the police when he did so. If Gersbacher was not disobeying a lawful police order when he moved away there is nothing else before the Court that suggests that NYPD officers had probable cause for an arrest for Obstruction of Governmental Administration or Disorderly Conduct. *See* N. Y. PENAL LAW § 195.05 ("A person is guilty of obstructing governmental administration when he . . . attempts to prevent a public servant from performing an official function . . . ."); N.Y. PENAL LAW § 240.20(6) ("A person is guilty of disorderly conduct when . . . he congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse."). It follows that if the police did not have a lawful reason to arrest Gersbacher, there is no way he could have been guilty of resisting arrest. *Curry v. City of Syracuse*, 316 F.3d 324, 336 (2d Cir. 2003) ("It is well established in New York that 'probable cause to arrest is a prerequisite for making an authorized arrest,' and if there is no probable cause to arrest a person, that person 'cannot be guilty of resisting arrest.'") (quoting *People v. Mohamadou*, 698 N.Y.S.2d 445, 447-48 (N.Y. Crim. Ct. 1999)). Because nothing in the pleadings supports Defendants' assertion that there was probable cause to arrest Gersbacher, the complaint states a cognizable claim for false arrest.

[5] The Court notes that later in 2011, Brookfield Properties, the owner of Zuccotti Park, asked the NYPD for assistance in evacuating the park. *See Thimmesch v. City of New York*, 2013 WL 1558699 at *1 (S.D.N.Y. April 9, 2013) (citing *People v. Nunez*, 943 N.Y.S.2d 857 (N.Y. Crim. Ct. 2012)). Had this same incident occurred after Brookfield requested police assistance in clearing the park, there might have been probable cause to arrest Gersbacher for trespassing. *See id.* However, neither Gersbacher nor Defendants argue that Gersbacher was trespassing on September 20, 2011.

Defendants correctly note that even where probable cause does not exist, an individual officer may be shielded from liability by qualified immunity for making the arrest at issue. An officer is "entitled to qualified immunity against a suit for false arrest if he can establish that he had 'arguable probable cause' to arrest the plaintiff." *Garcia*, 779 F.3d at 92 (quoting *Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013)). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Garcia*, 779 F.3d at 92 (quoting *Zalaski*, 723 F.3d 382 at 390)). "On a motion to dismiss, however, a qualified immunity defense based on arguable probable cause 'faces a formidable hurdle . . . and is usually not successful.'" *Higginbotham v. City of New York*, ---F.Supp.3d---, No. 14-CV-6147, 2015 WL 2212242 at *4 (S.D.N.Y. May 12, 2015) (quoting *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 191-92 (2d Cir. 2006)). This case is not the rare case that clears that hurdle. Defendants offer no argument based on the pleadings that even arguable probable cause existed, the Court is unable to find that the individual officer defendants are entitled to qualified immunity based on arguable probable cause.

**D. The Retaliation Claim**

Having concluded that the pleadings will not support Defendants' contention that there was probable cause for Gersbacher's arrest, the Court must separately consider whether his retaliation claim survives. "In order to state a retaliation claim, we require a private citizen to show: '(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right.'" *Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010) (citing *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)).

Gersbacher has pleaded all three elements. He and other Occupy Wall Street participants were engaged in what can reasonably be described as "political speech in its purest form." *Mitchell v.*

*City of New Haven*, 854 F.Supp.2d 238, 246 (D.Conn. 2012). Gersbacher has alleged that Defendants arrested him due to his participation in the Occupy Wall Street demonstration at Zuccotti Park, and has also alleged that the physical, mental, and emotional injury he suffered due to the September 20, 2011 incident kept him from rejoining the Occupy Wall Street demonstrations. Compl. ¶¶ 3, 120-21, 127. Therefore, his retaliation claim withstands the motion to dismiss.

**E. Excessive Force Claim**

"Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is 'objectively unreasonable in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation.'" *Carpenter v. City of New York*, 984 F.Supp.2d 255, 267 (S.D.N.Y. 2013) (quoting *Papineau v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006)). Whether the force used was unreasonable and therefore excessive is a fact-specific inquiry. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004). In determining whether the force used in a given arrest is reasonable, courts pay careful attention to the facts and circumstances of each case, including (1) the severity of the crime at issue, (2) whether the arrestee poses an immediate threat to the safety of the officers or others, and (3) whether the arrestee is actively resisting arrest or attempting to flee. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

Gersbacher pleads facts sufficient to sustain his excessive force claim. The three crimes discussed above, Obstruction of Governmental Administration, Disorderly Conduct, and Resisting Arrest, are not severe. *See, e.g.*, *Brown v. City of New York*, --- F.3d ---, 2015 WL 4924395, at *6 (2d Cir. Aug, 19, 2015) (applying the *Graham* factors and describing the severity of a disorderly conduct charge as "unquestionably slight"). Nothing in the complaint suggests that Gersbacher posed a safety threat to the officers, and although there are some indications that Gersbacher may have attempted to leave the immediate area—the complaint describes Gersbacher moving away from the officers after the initial contact—nothing indicates that he was actively resisting arrest or that it

would have been at all reasonable for five officers to pin Gersbacher down with their full body weight and punch him. Compl. ¶¶ 35, 36, 42 – 50, 52. Defendants fail to address these allegations beyond pointing to the video they wished the Court to consider, and on the basis of the allegations contained in the pleadings Gersbacher does state a claim for the use of excessive force.

Defendants do dispute Gersbacher's allegations that the tightness of his flexi-cuffs constituted excessive force, and on that point they are correct. Defs.' Br. 17 n.13. In analyzing an excessive force claim arising out of the use of handcuffs, courts consider (1) whether the handcuffs were unreasonably tight; (2) whether the defendants ignored the plaintiff's pleas that the handcuffs were unreasonably tight; and (3) the severity of the resulting injury to the wrists. *Higginbotham*, 2015 WL 2212242 at *6 (citing *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F.Supp.2d 459, 468-69 (S.D.N.Y. 2008)). Gersbacher alleges that the handcuffs were too tight and that the NYPD officers repeatedly ignored his requests that they be loosened. Compl. ¶¶ 94, 95, 98, 99. However, Gersbacher's allegations relating to his wrist injuries—that he later found cuts and bruises on his wrists were the flexi-cuffs were fastened—fail to satisfy the third element. *Id.* ¶ 102; *see Higginbotham*, 2015 WL 2212242 at *6 (collecting cases where bruising, swelling, and cuts were found insufficient to sustain excessive force handcuffing claims).

The court notes, therefore, that Gersbacher has failed to plead an excessive force claim based upon the tightness of his handcuffs, but because the facts in support of his excessive force claim are sufficient to state a claim for excessive force without the flexi-cuff related allegations, the claim survives.

**F. Due Process Claim**

A claim for deliberate indifference to medical needs brought by a pretrial detainee in state or municipal custody, such as Gersbacher, is brought under the Due Process Clause of the Fourteenth Amendment. *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009). A plaintiff bringing such a claim

must show both that (1) he had a "serious medical condition," and (2) that he was treated with "deliberate indifference." *Id.* at 72 (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000)).

Gersbacher's Due Process claim is based on the NYPD officers' treatment of him during his asthma attack. Gersbacher told the police officers that he was having an asthma attack, as did a bystander. Compl. ¶¶ 57, 59, 64, 66. The officers continued to pin Gersbacher to the ground and did not permit the bystander to provide Gersbacher with an asthma inhaler for one to two minutes. *Id.* ¶¶ 60, 68 – 72; Report at 80.

An asthma attack, depending on the severity, can be a "serious medical condition" of constitutional significance. *Bost v. Bockelmann*, No. 9:04-CV-0246, 2007 WL 527320, at *9 (N.D.N.Y. Feb. 20, 2007) (citing *Flemming v. Velardi*, No. 02-CV-4113, 2003 WL 21756108, at *2 (S.D.N.Y. July 30, 2003)); see also *Patterson v. Lilley*, No. 02-CV-6056, 2003 WL 21507345, at *4 (S.D.N.Y. June 30, 2003) (being asthmatic, on its own, is not a "serious medical condition," but an actual asthma attack can be)(citing *Sulkowska v. City of New York*, 129 F.Supp.2d 274, 292 (S.D.N.Y. 2001) (plaintiff's medical condition was "far from serious" when plaintiff did not complain of or exhibit symptoms of an asthma attack); and *Ennis v. Davies*, No. 87-CV-1465, 1990 WL 121527, at *3 (S.D.N.Y. Aug. 15, 1990) (denying motion for summary judgment based on prison official's refusal to provide an inmate with his asthma medication during an attack)). Because Gersbacher has alleged that he was experiencing an asthma attack during the course of his arrest, he has pleaded sufficient facts to satisfy the first element of this claim.

"An official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to [the detainee's] health or safety . . . ." *Cuoco*, 222 F.3d at 107 (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). Gersbacher alleges that Officer Ramriez instructed him to decline medical care, and intimidated him into doing so when he was asked if he needed it at Central Booking. Compl. ¶¶ 105 – 107, 111 – 113. Additionally, Gersbacher alleges

that five NYPD officers continued to pin him to the ground with their full body weight after he informed them that he was having difficulty breathing due to an asthma attack, and delayed his use of an asthma inhaler to alleviate the attack. As Defendants point out, delays in medical treatment do not necessarily reflect deliberate indifference. Defs.' Br. 21. However, where, as here, an inhaler was otherwise readily available, the delay took place while NYPD officers were pinning the plaintiff to the ground, and Officer Ramirez later deterred Gersbacher from seeking medical care, there are sufficient facts to withstand a motion to dismiss.

**G. Failure to Intervene and *Monell* Claims**

Having concluded above that Gersbacher does plead sufficient facts to support four claims for violations of his constitutional rights, we now turn to his claims premised on these underlying violations.

The failure to intervene claim is straightforward: because Gersbacher has adequately pleaded underlying constitutional violations and the presence of multiple NYPD officers during his arrest he may move forward to discovery. "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1998)). An officer is liable for failing to intervene when the officer (1) observes or has reason to know that (2) a constitutional violation, including the use of excessive force or a false arrest, has taken place, and (3) the constitutional violation was committed by a law enforcement officer. *Id.* (internal citations omitted). Gersbacher alleges that there was a group of officers, including Officers Gonzalez and Ramirez, some of whom participated in and some of whom witnessed his unlawful arrest and the excessive force used against him. Compl. ¶¶ 28, 42-52, 77. Where a plaintiff has properly alleged a constitutional violation, he is "entitled to discovery to determine which officers participated directly in the alleged constitutional

violations and which officers were present and failed to intervene." *Matthews v. City of New York*, 889 F.Supp.2d 418, 444 (E.D.N.Y. 2012) (citing *Biggs v. City of New York*, No. 08-CV-8123, 2010 WL 4628360, at *6 n.12 (S.D.N.Y. Nov. 16, 2010)).

Finally, Gersbacher's *Monell* claim also withstands Defendants' motion to dismiss. A *Monell* claim requires a plaintiff to plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Rodriguez v. Winski*, 973 F.Supp.2d 411, 425 (S.D.N.Y. 2013) (citing *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)). A municipality can be said to have an official policy or custom "where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 737 (1989)).

Defendants make two arguments, in passing, regarding Gersbacher's *Monell* claim; neither succeeds. First, Defendants argue that Gersbacher has not alleged an underlying violation of his constitutional rights. For the reasons discussed above, see *supra* sections III.C – F, this argument fails. Second, Defendants claim that any injury Gersbacher suffered is a result of his actions and is therefore his fault, not the City's. This argument fails because it is based on facts taken from Defendants' interpretation of the videos, not the facts that Gersbacher alleged in his complaint, which are the only facts before the Court at this time. If Defendants wish to make arguments regarding the sufficiency of the facts alleged by Gersbacher in support of his *Monell* claim, they may make a motion under Federal Rule of Civil Procedure 12(c), however, none of the arguments raised by Defendants in this motion warrant dismissal of the *Monell* claim at this time.

**IV. Conclusion**

For the foregoing reasons, the motion to dismiss is DENIED and the Clerk of Court is directed to close the pending motion at Dkt. No. 15.

SO ORDERED.

Dated: September 25, 2015
New York, New York

GREGORY H. WOODS
United States District Judge