SAMUEL B. COHEN

WWW.SAMCOHENLAW.COM

_____

ATTORNEY & COUNSELOR AT LAW

494 8TH AVE. STE. 1000
NEW YORK, NY 10001
T/F(212) 537-5919
Sam@SamCohenLaw.com

April 25, 2016

Hon. Gregory H. Woods
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:    *Gersbacher. v. The City of New York, et al.* – 14cv7600 (GHW)
Request For Pre-Motion Conference or Intervention in Discovery Issues

Dear Honorable Judge Woods:

Please recall that I, along with the Law Offices of Stecklow & Thompson, represent Plaintiff Eric Gersbacher in the above-referred matter. Per your individual practices, I write today jointly with Defendants to convey Plaintiff's request for intervention in certain discovery issues in this matter. In short, Plaintiff seeks Court intervention 1) to determine the validity of Defendants' claims of privilege, asserted in response to Plaintiff's Document Requests 2, 9 through 20 inclusive, 26, 29, 30 and 35; 2) to compel meaningful response to Plaintiff's interrogatories in order to limit unnecessary deposition practice in this matter; and 3) to compel production of certain personnel and disciplinary records of officers involved in the incident at issue herein. In support of same, attached please *see* Plaintiff's Exhibit 1, Defendants' Initial Discovery Responses, with document requests and interrogatories at issue herein boxed in red. Finally, and perhaps most significantly, Plaintiff seeks Court intervention to ascertain the sufficiency of Defendants' efforts in complying with their discovery obligations in this matter, and to sanction Defendants if the Court concludes, as Plaintiff has, that Defendants have failed to exercise due diligence in discovery in this matter.

As noted in my prior correspondence with the Court, discovery in this case has proceeded with some difficulties. Plaintiff has raised discovery issues with Defendants via several letters

and e-mails, beginning in mid-February of 2016, shortly after receipt of Defendants' initial responses to Plaintiff's discovery requests, which were tendered, *inter alia*: 1) without production of any additional documents; 2) without a privilege log to elucidate Defendants' claims of privilege raised in response to approximately half of Plaintiff's discovery requests; 3) and, Plaintiff submits, without substantive response to Plaintiff's interrogatories. Plaintiff first noted these issues to Defendants in a letter of February 19, 2016, *see* Plaintiff's Exhibit 2, along with numerous other issues that have since been resolved through conference, including, but not limited to, Defendants' objections to over half of Plaintiff's document requests, allegedly pursuant to SDNY Local Rule 33.3, which does not apply to document requests.

At no point until the instant submission was underway have Defendants raised any issues or deficiencies in Plaintiff's production via letter, or to conference issues relating to Plaintiff's production. Plaintiff, by contrast, began giving Defendants notice of discovery issues by letter and seeking to conference said discovery issues with Defendants beginning approximately a week and a half following receipt of Defendants' putative responses to Plaintiff's discovery requests. To the extent that Defendants complain of Plaintiff's discovery practice in their contribution below, they misrepresent the facts of discovery in this matter and have failed to comply with the meet-and-confer requirements set forth in the FRCP and Your Honor's own individual rules, and their complaints should be disregarded as such. To the extent that Your Honor entertains Defendants' submission below, Plaintiff requests leave to submit additional exhibits demonstrating his compliance with relevant discovery rules.

Through Plaintiff's diligent conferencing and pursuit of these discovery issues with Defendants, Plaintiff has received approximately 600 pages of additional production in this matter, comprised in bulk of training documents that had already been produced to Plaintiff's Counsel in other litigations, and indeed still bearing the Bates stamps of those other litigations. To Plaintiff, these belated, multiply-Bates-stamped disclosures raise the question of why those responsive documents were not produced by Defendants until Plaintiff threatened to seek Court intervention. Plaintiff also belatedly received a TARU video of the incident shot by a Detective who was not identified in Defendants' 26(a) disclosures until several weeks thereafter, which played a significant role in Defendants' deposition of Plaintiff, which took place on Thursday, March 24, 2016. Plaintiff does not have time remaining, under the present discovery schedule, to depose this TARU Detective.

Defendants also belatedly produced a document styled as a privilege log, which only notes the basis for privilege redactions in documents produced along with said log, without noting which, if any, of Plaintiff's discovery requests said documents are responsive to. See Plaintiff's Exhibit 3, putative privilege log produced by Defendants on February 19, 2016. Subsequent communication with Defendants resulted in Defendants claiming that all of the documents identified in the privilege log were produced in response to one of Plaintiff's "catch-all" document requests, seeking all documents relating to the action, leading Plaintiff to conclude that most of Defendants' claims of privilege in this case are unfounded, and that Defendants have accordingly waived privilege over a number of issues in this matter. All of the above issues are discussed in Plaintiff's e-mail to Defendants' Counsel regarding discovery issues, sent March 9, 2016, attached here as Plaintiff's Exhibit 4, and the law underlying Plaintiff's position on privilege is set forth in Plaintiff's Exhibit 2. In response to same, Defendants made additional production of additional roll call documents, since Defendants had apparently only at that point realized that they were inquiring with the wrong NYPD posts to identify officers involved in the incident at issue here.

The overall sufficiency of Defendants' discovery practice has been questionable at all stages of discovery in this matter, and Plaintiff has received the bulk of discovery produced in this matter through conferencing his objections to Defendants' deficient productions. In these conferences, Plaintiff's Counsel repeatedly stressed that responses to Plaintiff's interrogatories would be of critical use to identify individuals who took part in Plaintiff's arrest for deposition[1] and sought responses to Interrogatories from Defendants in order to advance this critical aspect of discovery. To date, Defendants have refused to supplement the preponderance of their Interrogatory responses in keeping with their continuing obligations under FRCP 33, only supplementing responses to Plaintiff's interrogatories 2, 4, and 15. Defendants have also at length produced the identities of five individual employees of Defendant City of New York, in correspondence styled as a supplementation of Defendants' FRCP 26(a) disclosures, at least two of whom were identified by Plaintiff in his own FRCP 26(a) disclosures in this matter. In the

---

[1] Due to the time that has elapsed since the incident at issue in this case, Plaintiff is aware and accepts that many of the individual NYPD officers who took part in his arrest cannot be named as parties to the litigation. However, Plaintiff respectfully submits that the identities, records and testimony of those persons are germane and relevant to Plaintiff's *Monell* claims, and should be produced herein as if they were parties in this matter.

initial session of the deposition of Defendant Winski, he identified several additional officers who were present at the time of the incident, individuals who remain formally undisclosed by Defendants. See Winski Deposition Transcript, Page 20, Lines 8-15, attached hereto as Exhibit 5 with preceding page included for context. If Defendants could have been troubled to ask the actual parties for their assistance in the preparation of their discovery responses, it is likely that some or all of the numerous depositions presently noticed in this matter could have been obviated, or at very least scheduled with more appropriate deponents.

Additionally, as sadly usual in §1983 matters with *Monell* claims, Defendants' responses to Plaintiff's requests for production of policy documents and personnel records have been significantly deficient herein, and Defendants have claimed, as to policy and training materials, that no such policy or training materials were generated in relation to Occupy Wall Street, a claim that Plaintiff finds unbelievable in light of outside testimony. In the April 13, 2016 deposition of NYPD Captain Mark Iocco by Plaintiff's Co-Counsel Wylie Stecklow in another matter, Captain Iocco testified that he would often receive memoranda in his Occupy Wall Street detail assignment folders, and was directed to either distribute said memoranda or recite their contents to officers under his command. Plaintiff submits that Captain Iocco's testimony casts serious doubt on Defendants' assertion that no written policy documents were created in relation to Occupy Wall Street. Defendants should document the steps they took to ascertain this alleged absence of written policy, to support the claim that one of the largest bureaucracies in the world made no policy with respect to a historically significant, long running, and heavily policed peaceful protest event. While the transcript of said testimony is not yet available, it would be included in a motion to compel on the subject matter discussed here.

The issues noted briefly above, taken together, lead Plaintiff to question Defendants' diligence in complying with their discovery obligations in this matter. Plaintiff seeks a motion schedule to challenge Defendants' broad and unsupported assertions of privilege in document responses, and to further compel Defendants to detail the efforts that they have made in discovery in this matter so that the Court may assess whether Defendants should be sanctioned for failing to comply with their discovery obligations, and to further compel the production of additional responsive personnel records and policy documents which Plaintiff believes to exist and be responsive in this matter.[2]

---

Thank you for your time and consideration.  Please do not hesitate to have your clerk contact us with any questions or concerns.

I remain,

Very Truly Yours,

~//s//~
Samuel B. Cohen, Esq.


Defendants' Response:


Defendants made disclosures on December 30, 2015, and on February 9th, 10th and 19th, 2016.  Subsequent to these disclosures, an initial meet and confer took place on February 19, 2016.  By way of e-mail, plaintiff's counsel complained that defendants' disclosures made by letter February 9th, 10th and 19th, 2006, were not sufficient, stating that documents responsive to a particular request, "without further elaboration, is simply not helpful."  Defendants, by way of detailed letters dated March 4th, 8th 9th,  and April 12th and 20th 2016, made numerous additional disclosures, including explanations as to which interrogatory and/or document request each disclosure corresponded to. [3]  See Exhibit A, Defendants' Disclosures (redacted for ECF; disclosures with confidential privilege log not included; Defendants' deficiency letter not included for plaintiff privacy).

Following plaintiff's deposition, defendants scheduled and rescheduled several times the deposition dates of five members of the NYPD to accommodate plaintiff's counsel. During this process, plaintiff forwarded his portion of this joint letter.  Defendants immediately contacted plaintiff's counsel seeking a second meet and confer to resolve outstanding discovery issues as required by your Honor's Individual Rules.  At the in-person meet and confer, which took place on March 31, 2016, defendants came to the table ready and prepared, (1) to go over each of plaintiff's interrogatories and document requests to determine what more defendants can do to respond; (2) to discuss each disputed redaction and each asserted claim of privilege; and (3) to discuss each point of dispute outlined in plaintiff's portion of the joint letter to your Honor.

---

[3] Defendants provided a privilege log for redactions on the same date and in the same cover letter accompanying the redacted disclosures. To date, plaintiff has failed to provide a privilege log for redactions of documents disclosed to defendants.

Plaintiff's counsel refused to discuss any of these issues, repeating that defendants' disclosures and responses to interrogatories and requests were inadequate. The meet and confer ended in five minutes.

Defendants have restated their objections and responses to various document requests on numerous occasions. Specifically, defendants objected to requests that impinge on privilege and/or are overbroad and entirely disproportional to the discovery needs of this case. Defendants also objected to the extent that plaintiff's requests are beyond the scope of discovery as set forth in the recent amendment to FRCP Rule 26(b)(l). By way of letters dated March 3rd, March 9th, as well as at the March 31st meet and confer, defendants reiterated that if there were specific documents within these requests that plaintiff would like disclosed, defendants are open to discussion on those requests. Defendants have received no response as of yet to these offers. Plaintiff has refused to narrow these requests.

A sample of such a request is for any and all documents that comprise or are part of the personnel, disciplinary, medical, psychological, and employment files of <u>all</u> New York City Police employees present at plaintiff's arrest during a mass demonstration. Typical of that and also disproportional to the discovery needs of this case is a similarly over burdensome request for all documents concerning all complaints and/or disciplinary or police review of <u>all</u> police officers present at plaintiff's arrest by the CCRB, DAO, Internal Affairs Bureau/Division and Inspectional Services Division Records, or other New York City agency or NYPD department. Plaintiff also requests the complete documents and materials concerning each incident listed on the police officer's disciplinary record; the complete documents and materials concerning all complaints and other disciplinary or internal police review of activities by the police officers maintained by the New York City Police Department; and all such information contained in computers maintained by the New York City Police Department', or any subdivision thereof, including, but not limited to, information which is retrievable by computer codes. Plaintiff has been provided the CCRB histories, the IAB histories and Central Personnel Indices for both defendants in this case. Notwithstanding, he seeks production of this overbroad request.

It is important to note that plaintiff's arrest occurred very early on—three days into the Occupy Wall Street ("OWS") movement. Many of the NYPD personnel in this case were re-posted to Zuccotti Park from policing activities during the week of the UN General Assembly. Plaintiff complains of defendants' lack of disclosure of all NYPD personnel present near

plaintiff's arrest. However, personnel were extracted from precincts all around the City. Because this was so early on in the OWS protests, there is no central record which contains the names of all of the members of service present on this day. Defendants are continuing to try to identify personnel present in that area from any possible identifier that can be seen on video, and have indeed identified another officer from an hours long, slow motion view of video in which his collar brass could be seen.

Plaintiff complains that defendants' assertion, that to the best of their knowledge and belief no Occupy-specific policy documents were created, is doubtful. Plaintiff refers to deposition testimony from Captain Mark Iocco in support. Captain Iocco is not a defendant in this case, and a copy of his deposition transcript has not been made available. If Captain Iocco testified that the NYPD distributed documents to officers which contained OWS-specific policies, defendants need to review that transcript. It is noteworthy that on the date of incident in this case, Mark Iocco was a lieutenant assigned to an administrative position. Plaintiff complains that the officer who filmed the TARU video was belatedly disclosed. This individual was disclosed and his video was disclosed within the discovery deadline. Plaintiff complains that Inspector Winski recognized NYPD personnel from videos played at his deposition. The Inspector was the commanding officer of the 1st precinct. He can recognize a good number of high-ranking personnel. To date, plaintiff has failed to notify any of these individuals for deposition, presumably because they do not appear from any video to have played any part in plaintiff's arrest or this incident.

What is not in plaintiff's portion of this joint letter is that on March 23, 2016, less than 24 hours before plaintiff's deposition, plaintiff disclosed 127 pages of documents, in a three-sentence letter without any reference to a corresponding interrogatory or document request and with no elaboration whatsoever. The documents were not received until after the deposition. However, as a courtesy to plaintiff, who lives out of New York City, at the end of the deposition defense counsel offered to review, and together with two colleagues, did review all of the 11th-hour disclosures in one hour and then continued the deposition until after 7:00 p.m., in an effort to prevent plaintiff from having to return to New York City. Also on March 23, 2016, plaintiff disclosed an individual without reference to any particular interrogatory or document request.

At his deposition, plaintiff testified that he has been treated by a mental health professional since 2011.  He further testified that this therapist was recommended to him by plaintiff's counsel in 2011, and yet no release was provided until the date of plaintiff's deposition.  Plaintiff also testified that he had a serious back injury a few years prior to his interaction with officers in which he claims he sustained back injuries.  Defendants have made two requests for a release for this medical information and provided the appropriate paperwork to plaintiff's counsel for execution.  Plaintiff refused to provide this release.

Finally, upon entering plaintiff's counsels' conference room for his deposition, Inspector Winski immediately noticed a framed and hung newspaper article from September 2015 quoting his deposition testimony verbatim in another case handled by plaintiff's counsel.  Plaintiff's counsel provided Inspector Winski's quoted deposition testimony to the press despite specifically being ordered by Judge Furman less than a year earlier in another Occupy Wall Street case, to cease making extrajudicial statements to the press, because the publicity could create a risk that defendants may be denied a fair trial.  See Laugier v. City of New York, et al., 13-cv-6171 (SDNY, Nov. 24, 2014) (Dkt. No. 63).  The undersigned had a conversation with plaintiff's counsel following Inspector Winski's deposition in this case regarding concerns about leaking deposition testimony to the press.  Plaintiff's counsel's response was to upload Inspector Winski's entire deposition transcript onto ECF as an exhibit to plaintiff's memorandum of law in support of his motion to compel in this case, instead of attaching the excerpts needed.   This type of gamesmanship, like plaintiff's refusal to confer in pursuit of sweeping and irrelevant discovery, subverts this process.  Defendants respectfully request that Your Honor adopt Rule 3.6 of the New York State Rules of Professional Conduct, prohibiting certain types of extrajudicial statements made by counsel, as an order of the Court applicable to all counsel of record in the instant case.


Very Truly Yours,

/s/
Amy Robinson
Special Federal Litigation