**WYLIE M. STECKLOW**      WWW.LAWYERSFORTHERESTOFUS.COM
**STECKLOW & THOMPSON**

217 CENTRE ST. FL. 6
NEW YORK, NY 10013
T(212) 566-8000
F(212) 202-4952
Wylie@SCTlaw.com

September 30, 2016

Via ECF
Hon. Judge Gregory H. Woods
USDC – SDNY - 500 Pearl Street
New York, NY 10007

       Re:    Gersbacher v. City of New York et al., 14cv7600(GHW)(KNF)

Dear Honorable Judge:

     Please accept this letter in response to the letter dated September 26, 2016 from ACC Lucas (Docket 80). Mr. Lucas argues – without basis in law or fact – that Ms. Carville is not an expert at all, and therefore is entitled to be paid only the $40 witness fee that would be paid to a third party fact witness. This argument is presented after defendants repeatedly acknowledged Ms. Carville's status as an expert, deposing her and seeking documents via subpoena from her solely through expert discovery.

     The defendants were able to depose Ms. Carville on July 8, 2016, after fact discovery had closed, **only because she was an expert**. When this Court ordered fact discovery closed on May 12, 2016, the defendants had not deposed Ms. Carville. They had not even noticed her deposition (although she had been disclosed as a possible witness in March). Defendants noticed Ms. Carville's deposition **as an expert**, deposed her **as an expert**, and engaged in voluminous further discovery relating to Ms. Carville **as an expert**. The defendants cannot now seek to avoid paying Ms. Carville' fees **as an expert**.

     Ms. Carville was disclosed to the defendants as a "provider who rendered the treatment to plaintiff" in plaintiff's responses to the defendants' first interrogatories. Plaintiff provided a HIPAA authorizing the defendants' to obtain Ms. Carville's treatment records. At the plaintiff's March 24th deposition, the plaintiff testified about his treatment, and provided a second authorization to release psycho-therapy notes. During fact discovery, the defendants never used the authorizations to obtain Ms. Carville's records, and (as stated above) never noticed Ms. Carville for deposition. **If Ms. Carville is not an expert, then all discovery relating to the plaintiff's treatment with her must cease**. **Fact discovery ended on May 12, 2016**. The defendants waived fact discovery concerning Ms. Carville. Indeed, all the discovery the defendants have obtained should be stricken from the record, since the defendants obtained it under false pretenses.

     Mr. Lucas was personally aware that he noticed Ms. Carville's deposition as part of **expert** discovery, not fact discovery. On June 29, 2016, Mr. Lucas wrote to this Court: "Counsel has conferred and agreed to a schedule to complete expert discovery, including the deposition of LCSW Carville." (Docket No. 64). Mr. Lucas knew that – but for Ms. Carville's status as an expert – he had zero entitlement to any deposition or other discovery from Ms. Carville. Now Mr. Lucas opines that Ms. Carville isn't "really" an expert. His arguments are based entirely on willful misrepresentation of case law.

     Rule 26 defines an expert witness as "any witness [a party] may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705" (i.e., opinion evidence). Rule 26(a)(2)(A). As the rule itself says, "**any witness**" whom a party intends to use to give opinion evidence is an expert. What makes a witness an expert is not who the person is, but what they are going to testify about: opinion (expert witness), or facts from personal knowledge (fact witness). Of course, "it is possible for the same witness to provide lay and expert testimony in a single case." *Bank of China v. NBM LLC*, 359 F.3d 171, 182 (2d Cir. N.Y. 2004).

The treating/non-treating dichotomy is not entirely without significance, but it does not have the significance Mr. Lucas ascribes to it. Courts recognize treating professionals routinely – as part of treatment – formulate opinions concerning their patients, such as opinions concerning causation or prognosis. A treating physician or professional is permitted to provide **some** opinion testimony without being designated or qualified as an expert, but with the limitation that it must be "based on the physician's personal knowledge of the examination, diagnosis and treatment of a patient and not from information acquired from outside sources." *Shepler v. Metro-North Commuter R.R.*, 2016 U.S. Dist. LEXIS 51259, 4-5 (SDNY Apr. 15, 2016). *Accord Ali v. Connick*, 2016 U.S. Dist. LEXIS 67466 (EDNY May 23, 2016). Designating a treating professional as an expert removes that limitation. *See Ali*, 2016 U.S. Dist. LEXIS 67466.

Mr. Lucas cites *Ali v. Connick* as setting forth a three-factor test that "courts" allegedly use to "determine whether an individual is an expert under 26(a)(2)(C)." Mr. Lucas willfully misrepresents this case to the Court (as he does *Korhonen and Deguzman*). In fact, he turns it inside out. In *Ali*, the plaintiff sought to introduce the testimony of five doctors. It had been stipulated that all five doctors were precluded from testifying as experts. "The issue before the court then, [was] whether the five treating physicians can nonetheless testify—and the scope of their testimony if admissible at all—**as fact witnesses**." *Ali*, 2016 U.S. Dist. LEXIS 67466, at *18 (emphasis added). The "test" quoted by Mr. Lucas was set forth by the court as it tried to decide whether one doctor's contacts with the plaintiff qualified him to testify **as a fact witness**. *Id.* at *25-26. *Ali* cites other cases that try to determine whether a particular doctor is a treating physician because, if so, the doctor can testify without being disclosed as an expert, but, if not, the doctor can testify only if there was expert disclosure. *See Evans v. United States*, 978 F. Supp. 2d 148, 153 (E.D.N.Y. 2013); *Zanowic v. Ashcroft*, 2002 U.S. Dist. LEXIS 3857, 4-6 (S.D.N.Y. Mar. 7, 2002). None of these cases use the test to qualify an expert.

The *Ali* test has nothing to do with Christine Carville, because – unlike the doctors in *Ali*, *Evans* and *Zanowic* – Ms. Carville was disclosed as an expert in compliance with Rule 26(a)(2)(C). (The defendants aver that Ms. Carville "was not properly disclosed," without identifying anything defective in her disclosure, which included everything required for a Rule 26(a)(2)(C) expert.) The question of whether Ms. Carville could give opinion evidence had she **not** been disclosed as an expert is purely hypothetical, and has nothing to do with the payment of her expert fees.

The defendants imply that only treating physicians per the *Ali* test can be a Rule 26(a)(2)(C) "non-retained" expert. The rule does not say so. The rule and FRE 702-703, simply require that the expert **not** have been retained for the litigation, have sufficient basis for her opinion, and have sufficient expertise. Pursuant to FRE 703, "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Ms. Carville qualifies. Ms. Carville first saw the plaintiff on March 23, 2012 for a three hour in-person session, because the plaintiff was experiencing acute psychological distress. (Carville Tr. 61:3-9; Gersbacher Tr. 72:2-22). Although the plaintiff lived in Buffalo, Ms. Carville told him he could call her as needed for talk therapy. He called her on July 17, 2012 for a 45 minute session. (Carville Notes, p. 2). This litigation was not filed until September 19, 2014. Thus, Ms. Carville was not "retained or specially employed to provide expert testimony in the case." The plaintiff next called Ms. Carville on the evening of December 23, 2014. Ms. Carville testified that she was preparing Christmas Eve dinner, but stopped to counsel him for an hour. (Carville Tr. 77:1-10). Experts hired for litigation do not normally take such calls under such circumstances. Ms. Carville counseled or evaluated the plaintiff twice more, in 2016. The defendants push the *Ali* test so hard because it is allows them to brush aside what the rules actually say, and what the facts actually are in this case. Ms. Carville has relevant personal knowledge from which she could testify as a fact witness, and, as a disclosed 26(a)(2)(C) expert, she can testify on that basis as well.

The defendants might make a *Daubert* motion or motion *in limine,* but yet the defendants have not made these motions while seeking to avoid paying Ms. Carville. The Court need not attempt to predict the outcome of that motion to decide the payment of expert fees. When an adversary notices its opponent's

expert for deposition, the adversary becomes liable for payment when the adversary avails itself of the expert's time or testimony, **regardless of whether either side makes use of that expert in the remainder of the litigation**. *See Ferlito v. County of Suffolk*, 274 F.R.D. 435, 436 (E.D.N.Y. 2011) ("Here, the Defendants sought and took the deposition of Plaintiffs' expert. That was their choice. … Defendants' belief that Mr. Certain's testimony at trial will be unnecessary and improper is irrelevant to this inquiry.").

Rule 26(b)(4)(E) commands that "before refusing to order a deposing party to pay the other party's expert, the district court must explicitly find either manifest injustice or that the fee was unreasonable." *Gwin v. Am. River Transp. Co.*, 482 F.3d 969, 975 (7th Cir. Ill. 2007). Mr. Lucas' sole arguments in this regard are allegations of so-called misconduct that Mr. Lucas makes all too freely for a person with his reputation. He provides no support for the allegation. Here is the "misconduct." I disclosed to the defendants a copy of Ms. Carville's notes, which contained these sentences: "My recommendation is for Eric to begin psychodynamic therapy, learn coping strategies with a counselor or therapist in his area [i.e, Buffalo]. I encouraged him to call me to discuss changes going forward, challenged or worsening of systems." (See Carville Dep. 34:12 – 36:21). Ms. Carville later produced a different draft of her notes (which she updated more than once)[1] which lacked these sentences. Without proof, Mr. Lucas argues that I asked Ms. Carville to remove the two sentences (or actually did it myself). Since I previously disclosed the complete document, I don't know why I would do this, what it would matter if I did, or how the defendants might be prejudiced by it.

Ms. Carville submitted an invoice for a total of $2,175.00. This included 14.5 hours at $150/hour. The City of New York admits the hourly rate to be reasonable, but questions the hours submitted. The court ordered payment on nine hours, for a total of One thousand, three hundred and fifty ($1,350.00) dollars. Mr. Lucas quibbles that Ms. Carville billed for the hours of 9:30 through 2:30 for her deposition, although the deposition had been noticed for 10:30, did not actually start until 10:42, and ended at 2:19. But experts should be compensated for the time they are "asked to reserve for the deposition." *Almonte v. Averna Vision & Robotics, Inc.*, 2014 U.S. Dist. LEXIS 129026 (W.D.N.Y. Jan. 24, 2014). The time the deposition actually beings or ends is not determinative. A federal deposition can run seven hours. Ms. Carville would be justified in considering that full seven hours to be reserved. In fact, she only billed for five hours. The fact that Ms. Carville made sure she was on time for the deposition by coming a bit early should be compensable. In the alternative, Ms. Carville can revise her invoice to bill for travel time, which she omitted "This Circuit has consistently held that recovery of fees for an expert's travel time … in connection with a deposition." *Advanced Video Techs., LLC v. HTC Corp.*, 2016 U.S. Dist. LEXIS 24118, *23-24 (S.D.N.Y. Feb. 23, 2016) (Ellis, M.J); *AP Links, LLC v. Russ,* 2015 U.S. Dist. LEXIS 167887, *5-6 (E.D.N.Y. Dec. 15, 2015).

Expert witnesses "are entitled to a reasonable fee for the time spent responding to defendants' discovery demands." *Conte v. Newsday, Inc.*, 2011 U.S. Dist. LEXIS 88546 (E.D.N.Y. Aug. 10, 2011) (citing Fed. R. Civ. Proc. 26(b)(4)(E)). *Accord Korabik v. Arcelormittal Plate, LLC*, 310 F.R.D. 205, 206 (E.D.N.Y. 2015); *Lent v. Fashion Mall Partners, L.P.*, 223 F.R.D. 317, 318 (S.D.N.Y. 2004); *Bonner v. American Airlines*, 1997 U.S. Dist. LEXIS 20836 (S.D.N.Y. Dec. 30, 1997) (awarding fees for expert's time "spent obtaining additional information to respond to requests made at his deposition"). Ms. Carville properly billed for such time. The defendants' ongoing quest to waste Ms. Carville's time with recursive and repetitive discovery about these two sentences means she has grievously underbilled the defendants. They have real nerve asking for the billed hours to be reduced.

It is respectfully requested that if this Honorable Court were to reconsider the order concerning Ms. Carville's invoice, the reconsideration allow compensation for all of the hours presented on the invoice she

---

[1] As the City has now conducted discovery and received various drafts of notes, all they have found was a process whereby Ms. Carville's handwritten notes – that began on the back of a folder, were eventually typed, organized, formatted, added to as more treatment sessions occurred, and finalized before being produced.

submitted to the City of New York, not just the nine (9) hours the court granted previously. The City of New York did more than depose Ms. Carville. They served a lengthy subpoena on her and caused her to spend additional time to respond to this. Certainly, the treatment of Ms. Carville by the City attorneys has been aggressive and unpleasant to her in a way that she did nothing to deserve. Mr. Lucas may well have dissuaded Ms. Carville from ever again agreeing to help a young man like the plaintiff in this case. That, and not Ms. Carville's reasonable and thoroughly justified invoice, is the "manifest injustice" in this case.

Respectfully submitted,

--//s//--

Wylie Stecklow